FILED
CLERK

4:02 pm, Jul 01, 2019

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

GOUTAM PERSAUD,

        Petitioner,

    -against-

MICHAEL KIRKPATRICK,

        Respondent.

----------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
15-CV-5645 (JMA)

**AZRACK, United States District Judge**

      Petitioner, Goutam Persaud ("Petitioner"), proceeding pro se, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 stemming from his conviction for two counts of first-degree robbery, two counts of first-degree burglary, one count of second-degree robbery, and one count of fourth-degree conspiracy. (ECF No. 1, the "Petition.") He pled guilty to all counts on March 29, 2012 and is currently incarcerated, serving a determinate sentence of twelve years imprisonment to be followed by five years of supervised release.

      In the instant petition, Petitioner asserts three grounds for habeas relief: (1) his sentence was excessive; (2) he was denied due process by the "cumulative pattern of errors" in the handling of his case;[1] and (3) his guilty plea was involuntary. For the following reasons, the Petition is DENIED in its entirety.

## I. BACKGROUND

      Petitioner, together with several co-defendants, was arrested in connection with a home robbery that occurred on November 19, 2010 in Woodbury, New York. After his arrest, Petitioner was indicted on two counts of first-degree robbery under N.Y. Penal Law § 160.15(4), one count

---

[1] Petitioner's claim regarding the "cumulative errors" in his case appears to challenge the trial court's decision on his suppression motion. See People v. Persaud, 118 A.D.3d 820, 987 N.Y.S.2d 221, 222 (2d Dep't 2014) (addressing this same claim raised by Petitioner's appellate counsel as a challenge to the trial court's suppression decision).

of second-degree robbery under N.Y. Penal Law § 160.10(1), two counts of first-degree burglary under N.Y. Penal Law § 140.30(1), and one count of fourth-degree conspiracy under N.Y. Penal Law § 105.10(1).

## A.  First Suppression Hearing and Guilty Plea

In August 2011, the Nassau County Supreme Court held a pre-trial suppression hearing concerning Petitioner and several of his co-defendants.  (See Suppression Proceedings, Aug. 2–10, 2011, ECF No. 8.)  Before the motion was decided, however, Petitioner pled guilty to all six charges in his indictment.  (First Plea Proceedings, Aug. 11, 2011, ECF No. 8-1.)  Petitioner was offered a sentence not to exceed twelve years in exchange for pleading guilty, and he waived his right to appeal.  (Id. at 3:13–18, 9:3–10:10.)  However, at that time, Petitioner was not informed that he faced the possibility of an additional term of supervised release.  (See id.; see also Second Plea Proceedings, Mar. 29, 2012, ECF No. 9-3, at 2:8–16.)  Accordingly, Petitioner moved to withdraw his guilty plea pursuant to N.Y. C.P.L. § 220.60.  (See Resp't Appeal Br., Apr. 5, 2013, ECF No. 7-1, Ex. 2 at 3–4.)  The motion was granted on November 22, 2011.  (Id.)

## B.  Second Suppression Hearing and Guilty Plea

After withdrawing his guilty plea, Petitioner again moved to suppress certain pieces of evidence.  In February 2013, the court conducted a joint Huntley, Mapp, and Dunaway hearing.  (See Suppression Proceedings, Feb. 14–16, 2012, ECF Nos. 9, 9-1, 9-2.)  The hearing addressed various oral and written statements made by Petitioner, two cellular phones allegedly seized from him, and whether there was probable cause for his arrest.  (Id.; see Suppression Decision, Mar. 22, 2012, ECF No. 7-1, Ex. 9.)  From the hearing transcript, it appears Petitioner's counsel argued that:  (1) the police lacked probable cause to arrest Petitioner, and so any searches or statements made pursuant to his unlawful arrest were fruit of the poisonous tree; (2) Petitioner's alleged

confessions were made in violation of <u>Miranda</u>; and (3) Petitioner was insufficiently fluent in English to knowingly make or understand the written statement he had allegedly signed. (<u>See</u> Suppression Proceedings, Feb. 16, 2012, ECF No. 9-2, at 200:19–206:5; <u>see</u> <u>also</u> Suppression Decision, Mar. 22, 2012, ECF No. 7-1, Ex. 9.)

Petitioner did not testify at the suppression hearing. The witnesses instead included the various police officers, detectives, and sergeants involved in the case—called by the People—as well as Petitioner's mother—called by his attorney. (<u>See</u> Suppression Proceedings, Feb. 14–16, 2012, ECF Nos. 9, 9-1, 9-2.) In particular, Detective McCarthy, the detective who interrogated Petitioner, testified about the Petitioner's oral and written confessions. He indicated that Petitioner was calm and cooperative throughout the interrogation, and after Petitioner made oral statements, Detective McCarthy memorialized the statements in writing based on his notes from their conversation. (Suppression Proceedings, Feb. 14, 2012, ECF No. 9, 65:10–67:25.) Detective McCarthy then gave the written statement to Petitioner to review which he testified took Petitioner approximately seven minutes. (<u>Id.</u>) He also testified that Petitioner made a couple corrections to the written statement and then signed it. (<u>Id.</u>) Detective McCarthy stated that at no point did the Petitioner indicate he had difficulty reading the written statement. (<u>Id.</u> 68:1–6.)

The trial court denied Petitioner's motion by decision dated March 22, 2012. (Suppression Decision, Mar. 22, 2012, ECF No. 7-1, Ex. 9.) The court held that the police had reasonable suspicion to stop the vehicle Petitioner traveled in, and probable cause to arrest him; the searches upon arrest were thus lawful; no <u>Miranda</u> violation had occurred; and all of Petitioner's statements were knowing and voluntary, and therefore admissible. (<u>Id.</u>)

After the trial court issued its decision, Petitioner again decided to plead guilty to all six charges in the indictment, this time in exchange for a sentence of twelve years imprisonment and

five-years supervised release.  (Second Plea Proceedings, Mar. 29, 2012, ECF No. 9-3.)  Petitioner entered his plea on the record on March 29, 2012.  (Id.)  When questioned by the court, Petitioner: (1) stated he was satisfied with his attorney's services (id. 4:20–21); (2) indicated he understood he was waiving his right to a trial by jury and right to appeal (id. 8:21–11:5); (3) acknowledged the length of the sentence he was pleading to and that he would be subject to deportation upon completion of his sentence (id. 11:16–13:4); and (4) declared he was making this plea, and waiving his right to appeal, voluntarily and by his own free will.  (Id. 11:3–5; 13:17–19.)  Notably, Petitioner specifically acknowledged that by waiving his right to appeal, he was giving up his right "to have the Appellate Court consider most claims of error, and whether the sentence is excessive and should be modified."  (Id. 10:11–18; see id. 9:23–11:5.)

As contemplated by his plea, on May 10, 2012, Petitioner was sentenced to a determinate term of twelve years imprisonment with five years of supervised release.  (Sentencing Tr., May 10, 2012, ECF No. 9-4.)

## C. **Direct Appeal**

With the aid of appellate counsel, Petitioner appealed his conviction to the New York State Appellate Division, Second Department (the "Appellate Division").  He raised the following three arguments: (1) that the sentence imposed by the lower court was excessive; (2) that he was denied due process by the cumulative pattern of errors in his case;[2] and (3) that he was prejudiced by an involuntary plea.  (Appellant's Br., Jan. 17, 2013, ECF No. 7-1, Ex. 1.)

---

[2]  Notably, Petitioner's appellate counsel raised similar factual arguments to those raised by his trial counsel in challenging Petitioner's stop, arrest, and custodial statements (e.g., that improper reliance on an incredible co-defendant to connect Petitioner to the crime meant the police lacked reasonable suspicion to stop, or probable cause to arrest, Petitioner; and that the police treatment of Petitioner upon arrest affected the voluntariness of his custodial statements).  (Appellant's Br., Jan. 17, 2013, ECF No. 7-1, Ex. 1 at 28–34; See also Pet. at 9–11 (raising the same factual arguments).)  However, Petitioner did not claim in his appellate brief, and does not assert here, that his purported lack of English skills added to the "cumulative errors" in his case or merits suppression of his written confession.

By decision dated June 11, 2014, the Appellate Division affirmed Petitioner's conviction and rejected all three claims. People v. Persaud, 118 A.D.3d 820, 987 N.Y.S.2d 221 (2d Dep't 2014). The Appellate Division held that Petitioner validly waived his right to appeal which thus precluded appellate review of his challenges to the lower court's decision on his suppression motion (i.e. his claim of "cumulative errors" in his case) and his assertion that his sentence was excessive. Id. The Appellate Division further determined that Petitioner's contention that his plea of guilty was not knowingly, voluntarily, and intelligently entered was unpreserved for appellate review, and "in any event . . . [was] without merit." Id.

Petitioner sought leave to appeal this decision to the New York Court of Appeals on July 19, 2014. (Letter to Ct. of Appeals, July 19, 2014, ECF No. 7-1, Ex. 3.) The Court of Appeals denied leave in an order dated October 1, 2014. People v. Persaud, 24 N.Y.3d 1004 (2014).

**D. The Instant Petition**

Petitioner then filed the instant Petition. (Pet., ECF No. 1.) He seeks habeas relief on the same three grounds raised in his direct appeal. (Id.)

## II. DISCUSSION

**A. Standards of Review**

**1. Overview of AEDPA**

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict the "power of federal courts to grant writs of habeas corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring). Under AEDPA, a district court will "entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a). To make that showing, the petitioner must satisfy three hurdles: (1) the exhaustion of state court remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of a state court decision. See 28 U.S.C. § 2254.

### 2. Procedural Default

A federal court will not review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the [petitioner] failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012). When a state court has dismissed a claim on such a procedural ground, the petitioner is procedurally barred from raising that claim in a § 2254 petition unless the petitioner can meet certain exceptions explained below.

The procedural bar applies if the state court decided a claim on such procedural grounds, even if the state court addressed the merits of a claim in the alternative. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (observing that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" where the court explicitly invokes a procedural rule as an independent ground for its decision) (emphasis in original).

A petitioner may overcome a procedural bar by demonstrating either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To demonstrate cause, a petitioner must establish that "some objective factor external to the

defense impeded counsel's efforts to comply with the State's procedural rule": for example, that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials . . . made compliance impracticable." Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted). A petitioner may also satisfy the cause requirement by demonstrating that the failure of his attorney to comply with state procedural rules denied him constitutionally adequate representation. See Tavarez v. Larkin, 814 F.3d 644, 650 (2d Cir. 2016), cert. denied, 137 S. Ct. 106 (2016); see also Restrepa v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999). A petitioner, however, generally cannot invoke this ground unless he first asserted an equivalent independent Sixth Amendment ineffective assistance claim in state court and exhausted his state-court remedies with respect to that claim. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451–52 (2000).

As for the prejudice requirement, the petitioner must demonstrate that counsel's errors (or any other basis invoked by the petitioner to establish cause) not only "created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage. . . ." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).

Even if a petitioner cannot establish cause and prejudice, a federal court may also excuse a petitioner's procedural default if he can show that a fundamental miscarriage of justice would result: in other words, "that he is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)). To prevail, the petitioner must put forth "new reliable evidence . . . that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324.

### 3. AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.SC. § 2254(d). The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13 (O'Connor, J., concurring). A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. This standard does not require that all reasonable jurists agree that the state court was wrong. Id. at 409–10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam)). This standard is "difficult to meet," and for good reason. White v. Woodall, 572 U.S. 415, 419 (2014)

(quoting <u>Metrish v. Lancaster</u>, 569 U.S. 351, 357–58 (2013)), <u>reh'g denied</u>, 573 U.S. 927 (2014). A petitioner must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u> at 419–20.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Lynn v. Bliden</u>, 443 F.3d 238, 246 (2d Cir. 2006). A state court's findings of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding." <u>Lynn</u>, 443 F.3d at 246–47 (quoting <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." <u>Williams</u>, 529 U.S. at 389.

### 4. Petitioner's <u>Pro</u> <u>Se</u> Status

Petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." <u>Jones v. Vacco</u>, 126 F.3d 408, 415 (2d Cir. 1997). In light of Petitioner's <u>pro</u> <u>se</u> status, the Court will construe his submissions liberally and interprets them "to raise the strongest arguments that they suggest." <u>Kirkland v. Cablevision Sys.</u>, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)). However, a <u>pro</u> <u>se</u> petitioner is not excused "from compliance with relevant rules of procedural and substantive law." <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983) (quoting <u>Birl v. Estelle</u>, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam) (internal quotation marks omitted)).

**B.  Claims for Relief**

Petitioner raises three claims in support of his Petition for a writ of habeas corpus:  (1) his sentence was excessive; (2) he was denied due process by the "cumulative pattern of errors" in the handling of his case (<u>i.e.</u> the trial court's decision on his suppression motion was improper);  and (3) his guilty plea was involuntary.  (Pet., ECF No. 1.)  All three of these claims are procedurally barred from federal habeas corpus review by independent and adequate state procedural grounds.  In any event, none of Petitioner's claims present a basis for habeas corpus relief.

**1.  Petitioner's Guilty Plea**

The Court first addresses Petitioner's claim that his guilty plea was involuntary.  Petitioner asserts, as he did on direct appeal, that his plea was not given knowingly, voluntarily, and intelligently.  The Appellate Division held that this claim was "unpreserved for appellate review," citing the New York State preservation statute (N.Y. C.P.L. § 470.05(2)) and cases holding that appellate challenges to the adequacy of a plea allocution must be preserved by an appropriate objection in the trial court.  <u>Persaud</u>, 118 A.D.3d 820, 987 N.Y.S.2d 221.  Indeed, "in order to preserve a challenge to the factual sufficiency of a plea allocution there must have been a motion to withdraw the plea under CPL 220.60 (3) or a motion to vacate the judgment of conviction under CPL 440.10."  <u>People v. Lopez</u>, 71 N.Y.2d 662, 665 (1988).  However, in the rare case "where the defendant's recitation of the facts underlying the crime pled to clearly casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea, . . . the trial court has a duty to inquire further to ensure that defendant's guilty plea is knowing and voluntary. . . . Where the court fails in this duty and accepts the plea without further inquiry, the defendant may challenge the sufficiency of the allocution on direct appeal, notwithstanding that a formal postallocution motion was not made."  <u>Id.</u> at 666.

Here, Petitioner did not make any applications to the trial court to challenge his guilty plea. Nor do the transcripts from either plea proceeding cast any doubt about Petitioner's guilt, or call into question the voluntariness of the plea. Accordingly, Petitioner's claim that his guilty plea was involuntary was unpreserved and barred from appellate review.[3] See Id. at 665–66. As a result, Petitioner is procedurally barred from raising this claim in a federal habeas petition. See, e.g., Lovick v. Martuscello, No. 16-CV-6871, 2018 WL 1582069 (E.D.N.Y. Mar. 30, 2018) (determining a habeas challenge to a petitioner's underlying guilty plea was procedurally barred when the petitioner failed to challenge his plea in the state trial court and the Appellate Division found it "unpreserved for appellate review"); Heise v. State, No. 08-CV-773, 2010 WL 3944721 (W.D.N.Y. Oct. 6, 2008) (finding habeas claim that a plea was involuntary was procedurally barred because the appellate court found the petitioner failed to preserve his claim before the trial court).

Furthermore, Petitioner cannot show "cause for the default and actual prejudice as a result of the alleged violation of federal law" or "that failure to consider the claims will result in a fundamental miscarriage of justice" to overcome this procedural bar. Coleman, 501 U.S. at 750. There is no explanation for Petitioner's failure to challenge his guilty plea before the trial court. While he refers to "ineffective assistance of counsel" generally, Petitioner fails to identify anything that demonstrates his trial counsel was ineffective in any way.[4] Moreover, there is no showing of actual prejudice—i.e. that there is "a reasonable probability that, but for counsel's errors [Petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v.

---

[3] The Appellate Division's finding, in the alternative, that Petitioner's involuntary plea claim was meritless does not negate its independent finding that the claim was procedurally barred. See Velasquez, 898 F.2d at 9; see also Harris, 489 U.S. at 264 n.10.

[4] A guilty plea cannot be overturned on the basis of allegedly inadequate representation "unless counsel was not a reasonably competent attorney and the advice was not within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984) (internal citations omitted). There is nothing in the record that suggests these conditions are met.

Lockhart, 474 U.S. 52, 59 (1985).  Finally, nothing in the record suggests that Petitioner is "actually innocent," such that failing to review his plea would result in a fundamental miscarriage of justice.  Accordingly, habeas review of Petitioner's involuntary plea claim is procedurally barred.

In any event, the Court finds Petitioner's challenge to the validity of his plea to be without merit.  It is well established that when considering the validity of a guilty plea, the Court is to consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  Id. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).  In other words, "[a] plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way,' and it is considered 'voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'"  Manzullo v. People of New York, 07-CV-744, 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988)).  Therefore, a "plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, mis-representation, or perhaps by promises that are by their nature improper."  Bousley v. United States, 523 U.S. 614, 619 (1998) (internal alteration and citations omitted).  Further, the "state court's determination of the voluntariness of a defendant's guilty plea is a factual issue that is entitled to a presumption of correctness on habeas review."  Murray v. McGinnis, No. 00-CV-3510, 2001 WL 26213, at *4 (S.D.N.Y. Jan. 10, 2001).

The record makes clear that Petitioner's plea was entered voluntarily, knowingly, and intelligently.  First, this was not Petitioner's first guilty plea in this case.  He initially pled guilty on August 11, 2011.  (First Plea Proceedings, Aug. 11, 2011, ECF No. 8-1.)  That he withdrew his

plea of guilty because he was not informed of his full potential sentence, and then again decided to plead guilty once he knew his full potential sentence, cuts squarely against his claim that his plea was involuntary. Petitioner had nearly a full year to reconsider pleading guilty, yet he chose, voluntarily, knowingly, and intelligently, to do it again.

Moreover, at the second plea hearing, the trial court extensively questioned Petitioner to ensure he understood the consequences of his guilty plea. (Second Plea Proceedings, Mar. 29, 2012, ECF No. 9-3.) The court carefully explained the various rights Petitioner would be forfeiting by entering a guilty plea, including: his right to a jury trial (id. 8:21–9:14); to the presumption of innocence (id. 8:25–9:22); to an appeal (id. 9:23–11:5); and to contest any deportation proceedings. (Id. 12:2–13:4.) Petitioner acknowledged he understood that he was relinquishing any defense he may have, and that a guilty plea is the same as a verdict of guilty given at trial. (Id. 8:25–9:22). Indeed, each time Petitioner was asked whether he understood his rights, Petitioner confirmed that he did. He also confirmed that no one was coercing him to plead guilty and that he was doing so voluntarily. (Id. 13:5–19.)

Petitioner's suggestion that he is not sufficiently fluent in English does not undermine the evidence that he entered into this plea voluntarily, knowingly, and intelligently. At his first plea hearing, Petitioner testified that he could write, but could not read English properly (a somewhat suspect assertion). (First Plea Proceedings, Aug. 11, 2011, ECF No. 8-1, 5:13–15.) Notably, however, Petitioner confirmed that he understood what the judge was saying and assured the court that he did not need an interpreter. (Id. 5:18–23.) Petitioner's mother, at the second suppression hearing, testified about his potentially limited ability to read and write English (even though Petitioner had previously indicated he could write in English), but even she admitted that he could speak and understand English. (Second Plea Proceedings, Mar. 29, 2012, ECF No. 9-3, 189:19–

90:13, 194:22–95:2.) There is nothing else in the record suggesting any limitations in Plaintiff's ability to read, write, or speak English. Most critically, during his second plea hearing, Petitioner gave no indication that he was unable to understand the trial court's questions. (See Second Plea Proceedings, Mar. 29, 2012, ECF No. 9-3.) He answered affirmatively and succinctly each time the trial court inquired whether he understood his rights and what was transpiring in the courtroom. (Id.) Thus, there is no evidence that Petitioner's English-language-skills interfered with his ability to plead guilty.

Finally, Petitioner's assertion that his plea was involuntary because the plea was not favorable is meritless. The maximum sentence for any single instance of robbery in the first degree or burglary in the first degree is a determinate twenty-five years imprisonment. N.Y. Penal Law §§ 70.02; 70.45(2)(f). Petitioner was charged with both first-degree burglary and first-degree robbery. If found guilty of both, each of the separate sentences could have run consecutively, rather than concurrently as contemplated by his plea agreement. See People v. Rondon, 72 A.D.3d 488, 898 N.Y.S.2d 128 (1st Dep't. 2010) (affirming consecutive sentences for first degree burglary and robbery convictions). This was thus the opposite of a disadvantageous plea and Petitioner could have reasonably concluded that acceptance of the plea deal was in his best interest so as to avoid a potentially lengthier sentence if found guilty at trial.

In sum, the Court finds that the state court's determination that Petitioner's guilty plea was voluntary, knowing, and intelligent is not contrary to or an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1).

### 2. Petitioner's Challenges to his Sentence and Suppression Decision

Review of Petitioner's claims regarding his allegedly excessive sentence and "cumulative errors" during his case are also procedurally barred by his valid waiver of appeal. In any event, they too fail to provide a basis for habeas corpus relief.

The Appellate Division, in affirming Petitioner's judgment of conviction, held that "defendant's valid waiver of his right to appeal precludes appellate review of his challenges, in effect, to the trial court's suppression determination . . . and his claim that the sentence imposed was excessive." Persaud, 118 A.D.3d 820, 987 N.Y.S.2d 221. These determinations were based on independent and adequate grounds of New York state law. See People v. Lopez, 6 N.Y.3d 248, 256 (2006); ("[W]hen a defendant enters into a guilty plea that includes a valid waiver of the right to appeal, that waiver includes any challenge to the severity of the sentence."); People v. Rivera, 97 A.D.3d 704, 947 N.Y.S.2d 897 (2d Dep't 2012) (finding defendant's valid appeal waiver precluded appellate review of claim that his sentence was excessive); see also People v. Sanders, 25 N.Y.3d 337 (2015) (recognizing that defendant's knowing, intelligent, and voluntary waiver of his right to appeal precluded his challenge to the lower court's suppression ruling); People v. Oseni, 107 A.D.3d 829, 966 N.Y.S.2d 677 (2d Dep't 2013) (finding defendant's valid appeal waiver precluded appellate review of his challenge to the trial court's suppression determination). Indeed, Federal Courts have recognized that where a New York state appellate court determines that a defendant's valid waiver of the right to appeal precludes appellate review of such claims, that determination is an adequate and independent State procedural ground that is "firmly established and regularly followed." Burvick v. Brown, No. 10-CV-5597, 2013 WL 3441176, at *6 (E.D.N.Y. July 9, 2013) (finding both suppression and excessive sentence claims procedurally barred). As

Petitioner intelligently, voluntarily, and knowingly waived his right to appeal as part of his intelligent, voluntary, and knowing plea, the Appellate Division correctly applied this rule.

Again, Petitioner has not shown cause, prejudice, or a miscarriage of justice that excuses him from this procedural default.[5]  However, the Court will still consider the merits of Petitioner's claims of excessive sentence and "cumulative errors."  For the following reasons, neither of Petitioner's remaining claims present a valid basis for habeas corpus relief.

### a.  Merits of Petitioner's Excessive Sentence Claim

It is well settled that an excessive sentence claim, such as Petitioner's, does not present a required federal constitutional issue when the received sentence "is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see also Taylor v. Connelly, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014) (noting same).  As discussed, under New York state law, Petitioner could have received a maximum sentence of twenty-five years (plus five years of post-release supervision) had he been convicted of either first-degree robbery or first-degree burglary.  N.Y. Penal Law §§ 70.02; 70.45(2)(f).  Moreover, these sentences could have run consecutively.  See Rondon, 72 A.D.3d 488, 898 N.Y.S.2d 128.  Accordingly, Petitioner's sentence pursuant to his plea deal, of a determinate term of twelve years imprisonment to be followed by five-years supervised release, was within statutory parameters and does not present a federal constitutional issue.  Therefore, this claim for habeas corpus relief, even if not procedurally defaulted, fails on the merits.

### b.  Merits of Petitioner's Suppression Claim

Petitioner's valid waiver of his right to appeal as part of his guilty plea also precludes habeas review of his claim regarding the "cumulative errors" in the handling of his case (i.e., his

---

[5]  While an invalid guilty plea could serve as cause for default, as discussed, supra, Petitioner's guilty plea was entered voluntarily, knowingly, and intelligently.

challenge to the trial court's denial of his suppression motion) on the merits. In general, once a petitioner has pled guilty with the advice of counsel, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" was deficient. Tollett v. Henderson, 411 U.S. 258, 267 (1973). The Supreme Court, however, recognized an exception to the Tollett rule for claims arising out of pre-plea suppression rulings when a state provides for appellate review of those issues after a guilty plea. Lefkowitz v. Newsome, 420 U.S. 283, 289–90 (1975).

New York law, as recognized by the Lefkowitz court, specifically permits a defendant to appeal suppression claims after pleading guilty. See id. at 290–91; N.Y. C.P.L. § 710.70(2) ("An order finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty"). However, New York law precludes the appeal of suppression claims where, as here, the defendant executed a valid waiver of appeal. People v. Kemp, 94 N.Y.2d 831, 833 (1999). As discussed above, Petitioner's plea—encompassing a waiver of his right to appeal—was voluntary, knowing, and intelligent. Accordingly, he cannot now attack the validity of the trial court's pre-plea suppression decision through a petition for a writ of habeas corpus. See Pena v. Graham, No. 08-CV-3828, 2009 WL 5173819, at *13 (S.D.N.Y. Dec. 30, 2009); Mapp v. Phillip, No. 04-CV-1889, 2005 WL 1541044, at *5 (E.D.N.Y. June 29, 2005).

In any event, the substance of Petitioner's claim regarding the trial court's suppression decision is without merit. First, Petitioner's challenge to the portion of the suppression decision that involves Fourth Amendment issues—such as the court's determination that the police lawfully stopped, arrested, and searched Petitioner, and acquired evidence as a result of that stop and

arrest—is barred by Stone v. Powell, 428 U.S. 465 (1976). "[R]eview of [F]ourth [A]mendment claims in habeas petitions w[ill] be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir.1992) (citation omitted).

Here, Petitioner was clearly granted an opportunity to litigate his claims that his Fourth Amendment rights were violated in state court, as the trial court conducted a full hearing on Petitioner's suppression motion. (See Suppression Proceedings, Feb. 14–16, 2012, ECF Nos. 9, 9-1, 9-2.) The procedural vehicles by which New York State provides defendants the opportunity to litigate Fourth Amendment claims have repeatedly been found facially adequate. See, e.g. Capellan, 975 F.2d at 70, n.1 (citing cases recognizing the adequacy of New York's procedure for litigating Fourth Amendment claims); Walker v. Walker, 259 F.Supp.2d 221, 225 (E.D.N.Y. 2003) (finding that where a petitioner "had a full and fair opportunity to raise his Fourth Amendment claims within the state courts, and [] there was no 'unconscionable breakdown' in the procedures provided", the district court could not review his Fourth Amendment habeas claim). Petitioner cannot claim that the state provided no corrective procedures, or that he was prevented from using the procedures to litigate his claims that his Fourth Amendment rights were violated. Accordingly, this Court cannot review any challenge to the portion of the trial court's suppression decision that involves Fourth Amendment issues.

Furthermore, the trial court's determination that Petitioner's statements after his arrest were voluntary was not contrary to, or an unreasonable application of, clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence before

the state court.  (See Suppression Decision, Mar. 22, 2012, ECF No. 7-1, Ex.9.)  28 U.S.C. § 2254(d)(1), (2).  Moreover, even if the Court was required to review the trial court's decision de novo, the Court would reach the same conclusion as the trial court and deny Petitioner's suppression motion.[6]

The Supreme Court has held that to determine the voluntariness of a confession, courts should look to the totality of the circumstances, including the characteristics of the accused and details of the interrogation.  See Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).  Some of the factors considered include the age and intelligence of the defendant, whether the defendant was advised of his constitutional rights, the length of the detention, whether the questioning was prolonged, the conduct of law enforcement officials, and whether there was physical punishment such as the deprivation of food or sleep.  See id.

A review of the evidence shows that Petitioner's statements were voluntary and admissible at trial.  Petitioner, who was twenty-four years old, made several outbursts after his arrest, while in the back of a police car.  No one questioned him prior to his outburst, and it is clear the statements were made voluntarily and spontaneously.  As part of his spontaneous outbursts in the patrol car, Petitioner indicated his willingness to cooperate, and that he was not going to be the only one to get in trouble for "this."

Petitioner's subsequent statements are likewise admissible.  Upon arriving at the station house, Petitioner was left alone in a break room for several hours.  There was no indication that he was mistreated.  When he was subsequently interviewed by a detective, Petitioner was advised of his Miranda rights.  Petitioner waived those rights and gave an oral statement to Detective

---

[6] The Court reaches this determination in the alternative because the Appellate Division did not consider the substance of Petitioner's challenge to suppression decision due to Petitioner's valid waiver of his right to appeal.

McCarthy, who committed the statement to writing which Petitioner then signed.[7]  There is no suggestion that there are any differences between Petitioner's oral statements and what Detective McCarthy memorialized in the written statement.  Nor is there any indication that Petitioner did not understand any of the questions Detective McCarthy asked him, or that he had difficulty reading the written statement.  Throughout his time at the station house, no one threatened Petitioner, struck him, or made him any promises to induce him to make a statement.  Nor did Petitioner ever request an attorney.  Furthermore, the entirety of Petitioner's questioning was approximately one hour, undercutting any inference of coercion that would suggest his statements were involuntary.

In light of the record evidence, the trial court's determination that Petitioner's post-arrest statements were made voluntarily cannot be deemed contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  See Berghuis v. Thomkins, 560 U.S. 370, 385–87 (2010) (finding that a petitioner knowingly and voluntarily made a statement to police because the evidence showed (1) he understood his rights; (2) his course of conduct indicated a Miranda waiver; and (3) there was no evidence his statement was coerced).  Moreover, even considering the suppression challenges de novo, the Court would reach the same conclusion as the trial court. Thus, even if Petitioner's claim of "cumulative errors" was not procedurally barred by his valid guilty plea (which it is), Petitioner would still not be entitled to habeas relief regarding the trial

---

[7]  On appeal, Petitioner did not expressly argue that his purported lack of English reading/writing skills merited the suppression of his written statement.  Accordingly, this factual argument may be unexhausted and procedurally barred. In any event, the Court finds, even on a de novo review, that this claim is clearly meritless.  Petitioner's assertion that he lacked sufficient fluency in English is belied by the record which does not show that his written statement was involuntary and worthy of suppression.  In any event, even accepting the testimony of Petitioner and his mother regarding his purportedly limited ability to read or write English, that still would not warrant suppression of his written statement given the lack of evidence that the written statement differed at all from his oral statements.  Moreover, even if the written statement was suppressed, Petitioner's identical oral statements would still be permitted into evidence, so any error is thus harmless.

court's decision denying his suppression motion.  Accordingly, Petitioner has no viable claims for federal habeas corpus relief.

### III.  CONCLUSION

For the reasons stated above, the Petition is DENIED.  A certificate of appealability shall not issue because Petitioner has not made a substantial showing that he was denied a constitutional right.  See 28 U.S.C. § 2253(c)(2).  I certify that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purpose of any appeal.  Coppedge v. United States, 369 U.S. 438, 444–45 (1962).  The Clerk of the Court is respectfully directed to mail a copy of this Order to the pro se Petitioner and to close this case.

**SO ORDERED.**

Dated: July 1, 2019
Central Islip, New York

   /s/ (JMA)                 
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE